U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR - 7 2008

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| NICK E. EUBANKS, INDIVIDUALLY, AND ON HIS BEHALF, BY HIS AGENT AND ATTORNEY-IN-FACT, VICKIE E. NEAL | CIVIL ACTION NO. 05-1532 |
| VERSUS | JUDGE TRIMBLE |
| SHERIFF JAMES E. ("BUDDY") JORDAN, ET AL. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment [R. 62] filed by defendants, Sheriff James E. Jordan, Chief Deputy Gregg Davies and Warden Raymond Whittington (hereinafter "defendants"). For the reasons expressed below, the court finds that the motion should be GRANTED.

## I.    BACKGROUND

### A.    Relevant Facts

Plaintiff, Nick E. "Peety" Eubanks (hereinafter "plaintiff"), is a former pre-trial detainee at Winn Parish Jail ("Winn"). Plaintiff filed this suit on August 28, 2005, claiming violations of 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and Louisiana law by defendants.[1]

---

[1]Complaint [R. 1] at p. 1.  Certain portions of plaintiff's claims were dismissed or stricken from his complaint in response to motions filed by various defendants.  See judgments R. 27 (1/11/2006), R. 31 (2/8/06) and R. 34 (5/26/2006).

Plaintiff was arrested and booked into Winn in late July of 2004.[2]  Plaintiff claims that during the early hours of August 28, 2004, he was asleep on the top bunk of his jail cell when he was suddenly dragged from his bunk to the floor and beaten by one or more unknown assailants.[3]  Plaintiff asserts that the beatings he received rendered him a quadriplegic requiring daily, around-the-clock care.[4]  Plaintiff's complaint alleges defendants are liable for failing to prevent his injuries because they engaged in conduct falling below the standard of care required of them under both federal and state law.

Defendants refute liability in this case, denying plaintiff's categorization of their conduct during the incident in question.  To that end, defendants filed this motion requesting summary judgment in their favor on the basis that any acts or omissions by them do nor rise to the level of "deliberate indifference."  Alternatively, defendants claim entitlement to qualified immunity from liability.  Defendants also request summary judgment in their favor as to plaintiff's state law negligence claims on the basis that plaintiff cannot demonstrate that defendants knowingly breached the duty of care owed to plaintiff.

**B.    Applicable Standards**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, indicate that there is no genuine issue as to any material

---

[2]Memorandum in opposition to motion [R. 67] at p. 2.

[3]Id., at ¶¶ 22 - 25.

[4]Id., at ¶ 22.

fact and the moving party is entitled to judgment as a matter of law.[5] A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] In making this determination, a court must draw all justifiable inference in favor of the non-moving party.[7] Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with specific facts showing a genuine factual issue for trial.[8] "Conclusory denials, improbable references, and legalistic argumentation" are not adequate substitute for specific facts showing that there is a genuine issue for trial.[9] The movant "must 'demonstrate the absence of a genuine material fact,' but need not negate the elements of the non-movant's case."[10] If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response.[11]

This case concerns a claim against certain prison officials by a former pre-trial detainee. As such, plaintiff's rights flow from the Fourteenth Amendment to the Constitution of the United States of America.[12] Under the Due Process Clause of the Fourteenth Amendment, pre-trial

---

[5] FED. R. CIV. P. 56(C); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Am. Home Assurance Co. v. United Space Alliance, 378 F.3d 482, 486 (5th Cir. 2004).

[6] Anderson, supra, at 248.

[7] Id. at 255.

[8] FED. R. CIV. P. 56(C); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[9] SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

[10] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, supra, at 323.).

[11] Id.

[12] See Bell v. Wolfish, 441 U.S. 520 (1979).

detainees are guaranteed freedom from punishment for crimes as to which their guilt has not been ascertained by due process of law.[13]  While it is undisputed that states may lawfully detain those accused of crimes prior to the adjudication of guilt or innocence, the treatment of any detainee during this pre-trial period must not rise to the level of punishment.[14]

In order to determine whether or not particular defendants may be held liable for claims by pre-trial detainees under 42 U.S.C. § 1983, we must first determine whether plaintiff's complaint concerns general conditions of confinement or an episodic act or omission.[15]  General condition cases have been described as those cases where a detainee challenges, for instance, the number of bunks per cell or the absence of some privilege.[16]  In contrast, episodic act or omission cases contain claims by detainees of particular harms resulting from particular acts or omissions by one or more officials.[17]

When a case concerns general conditions of confinement, the district court must ask whether or not the condition at issue is reasonably related to a legitimate governmental purpose.[18] The court may only impose liability where it finds no such reasonable relationship exists, as such condition then amounts to prohibited punishment to a pre-trial detainee.[19]  When a case concerns

---

[13]Bell, 441 U.S. 520 at 535 - 36 (internal citations omitted).

[14]Id.

[15]Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996)

[16]Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (citations omitted).

[17]Id.

[18]Bell v. Wolfish, 441 U.S. 520, 538 - 39 (1979).

[19]Id.

4

an episodic act or omission, the district court must ask whether or not the act or omission at issue amounts to "deliberate indifference" to a subjectively known substantial risk of unreasonable harm.[20]  In applying this standard, the court may only impose liability when it finds that the defendant(s) actually knew of the substantial risk of unreasonable harm and acted or failed to act in such a way that caused the detainee that harm, because negligence, whether simple or gross, does not amount to punishment and therefore does not violate the detainee's Fourteenth Amendment right.[21]

Qualified immunity is an affirmative defense which protects public officials from civil liability while performing discretionary functions when such acts or omissions were objectively reasonable in light of clearly established law.[22]  District courts must administer a two-part test in determining whether or not defendants are entitled to qualified immunity.  First, the court must, taking all allegations by plaintiff as true, ask whether or not plaintiff has asserted the violation of a clearly established constitutional right.[23]  If the court finds that plaintiff has asserted such a violation, it must continue its analysis by asking whether or not the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident in question.[24]

---

[20]Hare, supra.

[21]Id.

[22]Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997) citing Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir.), cert. denied, 506 U.S. 973 (1992); Siegert v. Gilley, 500 U.S. 226, 233 (1991).

[23]Colston, supra, 130 F.3d 96, 99.

[24]Hare v. City of Corinth, 135 F.3d 320, 326 (5th Cir. 1998).

It is well established that this analysis should be conducted before defendant is subjected to any discovery, as the defense of qualified immunity provides immunity from suit, rather than from mere liability.[25]   When a district court finds that defendant's conduct was reasonable in light of the clearly established law concerning plaintiff's rights at the time of the incident, defendant is entitled to have all federal claims against him dismissed.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment on Federal Claims

Defendants assert that they are entitled to summary judgment as to plaintiff's federal law claims on the basis that no genuine issue of material fact exists as to the incident in question and, further that, accepting plaintiff's version of the events as true, defendants' behavior does not rise to the level of deliberate indifference as required for the imposition of liability in this case. Plaintiff refutes this assertion and argues that genuine issues of material fact do exist concerning whether or not defendants had actual notice of plaintiff's eventual injury.

In determining whether or not the conduct complained of amounts to deliberate indifference, we begin with notice.  Without notice of the substantial risk of harm, no liability may be imposed.[26]

Defendants first point out that plaintiff cannot identify his assailant(s) and, moreover, was not in any fear of harm prior to his injury at Winn.[27] Defendant cites the following testimony in support of this contention:

---

[25]Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

[26]Hare, supra, 74 F.3d 633 (5th Cir. 1996).

[27]Memorandum in support of motion [R. 62-2] at pp. 1-2.

6

"Q.     Do you know who snatched you from the bed?
A.      No, sir.

*               *               *

Q:      Okay.  Now, the person who you said you saw when you were on the ground that
        was kicking you in the face, do you know if that was the same person that pulled
        you off or you're not sure?
A:      I don't know.
Q:      And the person that was kicking you, was it only one person or was it more than
        one person?
A:      I saw one person kicking me in the face, and I was receiving blows in the back.
Q:      And that was a black male who was kicking you?
A:      In the face.
Q:      Can you recall his – did you face at all?
A:      I could see his face, but not enough to recognize him.  All I know, it was a black
        male, and I saw more of his foot than his face."[28]

Defendants also cite plaintiff's deposition testimony in which he states that he never felt

threatened or at risk for harm at the hands of his fellow inmates and, in fact, felt that they "got

along like brothers" before this incident.[29]  Hence, say defendants, plaintiff cannot demonstrate

that they had notice that he would be harmed because plaintiff, himself, had no such notice.

In contrast to his testimony above, plaintiff now asserts that he was fearful of his jailers

and other inmates and that he shared these feelings with his father during one of his father's

visits to Winn.[30]  The court finds this argument curious given plaintiff's earlier testimony, but

does not find that this change of heart operates as a genuine issue of material fact.  Plaintiff has

not presented the court with any evidence that he made his jailers aware that he feared harm from

---

[28]Deposition of Nick Eubanks at p. 14, line 7 - p. 15, line 9.

[29]Id., at p. 15, line 10 - p. 15, line 22.

[30]Memorandum in opposition to motion [R. 67] at p. 3.

7

anyone while detained at Winn.  We find that, taking plaintiff's allegation that he was fearful of

harm at the hands of jailers or other inmates as true, this is insufficient to constitute notice to

defendants such as would impute actual subjective knowledge of plaintiff's impending injury.

Plaintiff also offers the affidavit of David Hatten, a former inmate at Winn, as evidence

that defendants had notice that he would be beaten and, in fact, acted to bring about this harm

as retaliation for plaintiff's threats to uncover misdeeds by defendants concerning his

prescription methadone tablets.[31]  Hatten's affidavit states that, while he was incarcerated at

Winn, he complained to Deputy Sheriff Todd Williams ("Williams") that his prescription anti-

seizure medication was "missing" and that he had no medicine left to take.[32]  Hatten then recalls

that Williams told him "the same thing that happened to Peety could happen to me for raising

hell about my medicine."[33]  Hatten also alleges that Williams told him "Peety threatened to sue

because he wasn't getting his meds" and that Williams "had Big 'R'[34] take care of him."[35]

Finally, Hatten testifies that he overheard Williams, on another occasion, tell another inmate that

he might "end up falling out your bunk and breaking your damn neck, too" if he did not stop

complaining about having his money taken from him upon booking into Winn.[36]

---

[31]Memorandum in opposition to motion [R. 67] at p.

[32]Affidavit of Hatten (1/5/08) at p. 2, attached as "Exhibit 10" to plaintiff's memorandum in opposition to motion [R. 67].

[33]Id.

[34]Hatten's affidavit alleges that "Big R" was the alias of Ken Nash, another inmate at Winn during plaintiff's detention.  Id.

[35]Id.

[36]Id., at p. 3.

Rule 56(e) of the Federal Rules of Civil Procedure dictates that affidavits "shall set forth such facts as would be admissible in evidence..." Having examined Hatten's affidavit, the court finds that this affidavit contains hearsay testimony which is not admissible under Rules 801 and 802 of the Federal Rules of Evidence. Accordingly, we cannot accept Hatten's hearsay testimony as summary judgment evidence such as would establish a fact question on the issue of prior knowledge by defendants.

Plaintiff next alleges that inadequate supervision, taking several forms, demonstrates defendants' actual knowledge of his eventual harm. Plaintiff's testimony asserts that he noticed, immediately after his injury, that a portion of the cells were open for the purpose of providing residents of certain cell blocks access to a working toilet.[37] Plaintiff argues that this fact is enough to establish a material fact question as to defendants' prior notice of his harm. Defendants dispute this, pointing out plaintiff's own testimony as follows:

> A:    ...And then I heard somebody going, "Jailer, Jailer, Warden!" – bam, bam, bam!! Then, bam! Because he was beating on the door, "Jailer, Warden, man hurt! Man hurt bad! Jailer, Warden, somebody!" And then I heard the doors of the cell being unlocked because they were real thick, like the door of hiding gold in Fort Knox or something. And you had to turn a bunch of knobs and a wheel and stuff, and it made racket, and I remember hearing that racket. And then I remember a voice saying "Go get him."[38]

Defendants argue that plaintiff's testimony above demonstrates that he was locked in his

---

[37]Memorandum in opposition to motion [R. 67] at p. 12, citing affidavit of plaintiff ("Exhibit 1") at p. 21.

[38]Affidavit of plaintiff, attached as "Exhibit D" to defendants' reply memorandum [R. 72], at p. 11, lines 10 - 19.

cell when help arrived after his injury, negating plaintiff's argument that defendants purposefully allowed other prisoners access to him in order to further a plot to injure him.  Defendants also argue that even if a portion of the cells were unlocked, which they dispute, this fact still does not demonstrate actual knowledge of plaintiff's impending harm. The court agrees and finds that plaintiff's argument contradicts his own prior testimony on this issue and that, even if these cells were unlocked to provide bathroom access to certain prisoners, this does not demonstrate a material fact question concerning defendants' actual subjective knowledge of plaintiff's impending harm. Taking plaintiff's own testimony[39] as true, the court finds that, if the cells were open, they were open for a legitimate purpose which is not shown to be related to plaintiff's injury.

Plaintiff's brief also argues that even if he did fall from his bunk, this accident is the result of his assignment to a top bunk and defendants' failure to follow certain medical intake procedures which created an unsafe environment for plaintiff at Winn. Defendants refute this argument and point out that, taking these allegations as true, plaintiff still fails to demonstrate a genuine issue of material fact as to defendants' actual subjective notice of plaintiff's impending harm.

Plaintiff also points to Grand Jury findings from March and September of 2004 in which the Grand Jury found certain conditions presented safety risks for prisoners at Winn.[40]  Plaintiff asserts that these findings and defendants' failure to assign him to a bottom bunk demonstrate

---

[39]Affidavit of plaintiff, attached as "Exhibit 1" to memorandum in opposition to motion [R. 67] at p. 21, lines 5 - 10.

[40]Grand Jury Findings attached as "Exhibit 5" to memorandum in opposition to motion [R. 67].

the existence of a genuine issue of material fact concerning actual subjective notice.  Plaintiff also points out that his father reported his previous back surgeries and methadone dependency to defendants, further indicating actual notice as required.  The court does not agree.

Plaintiff does not allege that he ever complained of any of the conditions of his confinement, including his assignment to a top bunk, prior to his injury.  Likewise, plaintiff does not aver that he was denied medication or other treatment for injuries pre-existing his detention.  Although we note the unfortunate findings of the Grand Jury and the understandable concern of plaintiff's father, we do not find that these evidentiary offerings demonstrate the existence of a genuine issue of material fact concerning defendants' actual subjective notice of an unreasonable risk of serious harm.  Plaintiff's arguments lack a connection between proffered evidence and his own particular injury, without which defendants may not be found "deliberately indifferent."  Given our findings above, the court concludes that defendants are entitled to summary judgment in their favor and to have all federal claims against them dismissed with prejudice.

### B.    State Law Negligence Claims

Plaintiff's complaint also alleges negligence by defendants in violation of Louisiana law.  Specifically, plaintiff alleges that defendants breached a duty owed to him and that this breach directly resulted in his ultimate injury.  Defendants deny such negligence and seek summary judgment in their favor as to these claims.

La. Civ. C. Art. 2315 states that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  In order to impose liability on defendants under this statute, the court must find that: (1) the defendants owed a duty of care to plaintiff, (2) that the defendants breached this duty, (3) that the risk of harm was within the scope

of the protection afforded by the duty breached and (4) that the conduct constituting the breach was the cause-in-fact of the resulting harm.[41]

Plaintiff points to prior arguments as to his federal claims as proof that material fact questions remain concerning whether defendants' conduct was negligent under state law. Defendants refute this contention, citing Moore v. Foti[42] for the assertion that defendants "must know or have reason to anticipate that harm will ensue and fail to use reasonable care to prevent it" if they their conduct is to be deemed negligent in this case. Defendants argue, again, that plaintiff presents no evidence which creates any indicia of prior notice or reason to anticipate plaintiff's eventual harm.

The court agrees with defendants' recitation of the applicable standard concerning state law liability for prisoner injury at the hands of other inmates. In Parker v. State,[43] the Supreme Court of Louisiana addressed this issue and found that the failure of officials to respond to notice that plaintiff feared an attack from another prisoner by segregating him did not amount to negligence. There, plaintiff's suit alleged that, because he was threatened by a former inmate paramour after the cessation of their relationship, defendants had, in fact, received notice of or reason to anticipate his eventual injury. Noting that defendants actually did take action to counsel these inmates and to diffuse any tensions between them, the court held that defendants' conduct was reasonable given the circumstances of that case. The court was careful to point out the difference between hindsight and an error in judgment, finding that "the decision must be

---

[41]Nelson v. Washington Parish, 805 F.2d 1236 (5th Cir. 1986) (citations omitted).

[42]440 So.2d 530, 532 (La. App. 4 Cir. 1994).

[43]282 So.2d 483 (La. 1973).

tested by the information, alternative courses of action and circumstances existing at the time."[44]

The court finds the reasoning of Parker helpful in analyzing defendants' conduct in this case. In Parker, the plaintiff took the initiative to express his fear and concern to his jailers. Here, plaintiff makes no claim that he was in fear of harm at the hands of other inmates or from his placement in a top bunk. Consequently, he makes no claim that he provided defendants with requisite notice. Plaintiff argues that, if he fell out of his bunk, defendants' inaction still constitutes negligence given the information about his health conveyed to them by plaintiff's father. Plaintiff was booked into Winn in late July of 2004.[45] While we are certain that plaintiff's father did express his concerns about his son's confinement and worried for his general care, we do not find that defendants should be expected to act in conformity with each instruction given by a concerned parent. Prisons must be run, as the court noted in Parker, not by hindsight, but rather with reasonable decision making in light of the information and alternatives available at the time. We again note that plaintiff makes no claim that he complained about any of the conditions of his confinement, threats or other issues. Without proof of notice, we need not delve further into whether defendants' actions were reasonable given suspected or anticipated harm.

The court finds that plaintiff has failed to demonstrate the existence of a genuine issue of material fact as to whether or not defendants had knowledge or reason to know of his eventual harm, either at the hands of other prisoners or as a result of a fall from his bunk. Accordingly, defendants are entitled to summary judgment in their favor as to all state law negligence claims

---

[44] Id., at 487.

[45] Memorandum in opposition to motion [R. 67] at p. 2.

against them and such claims should be dismissed with prejudice.

III.   **CONCLUSION**

Having considered the law and arguments before us and viewed them in the light most favorable to plaintiff, the court finds that plaintiff has failed to establish the existence of genuine issues of material fact as to requisite notice concerning both his federal and state law claims. In both instances, this demonstrated lack of notice forecloses any finding by this court of defendants' liability for plaintiff's injury. Accordingly, the court finds that defendants are entitled to summary judgment in their favor and that plaintiff's claims under 42 U.S.C. 1983, 1988 and Louisiana law should be dismissed with prejudice.

Alexandria, Louisiana
March 7, 2008

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

14